19-1061. We have the same council arguing here before us. I'm going to ask that, barring any questions that my colleagues have, additional questions regarding 315B, that issue that has been briefed, unless you have something new to add, that we just move on to the other issues. I think we heard some robust arguments from both parties and I think that may be enough. Now, my colleagues may want to ask additional questions, or you may have something new and different. Otherwise, let's move on to the other issues. All right. Thank you, Your Honor. You're correct. The time bar arguments are the same, so I'm going to move to the substance. Okay, thank you. So, for this appeal, we're dealing with the child patent, the 841 patent, and in addition to the procedural argument of the time bar, we do have the additional substantive arguments. In this IPR, there are three grounds on which the board found unpatentability. There was the NETCOM anticipation ground. The board's finding lacked substantial evidence because there was no board finding that the NETCOM reference actually disclosed CDMA technology, and they instead resorted to obviousness in an attempt to fill in the gap in that reference, and that was that was error and that unpatentability funding should be reversed. The second ground was anticipation based on gastroenitis, and that there's no substantial evidence showing anticipation because the board erred in mapping the identical structure, which was the remote station, on both the control and relay, which were separate elements in Claim 8 of the 841 patent, and so because of that, that unpatentability finding should also be the Nelson and Roach obviousness combination. There, there were two issues. First, there is no substantial evidence supporting a motivation to combine those references. The court, the board made no factual findings, which they are required to do to show a motivation to combine. Instead, they did essentially a book report summary of petitioner's attorney argument and found that that had rational underpinning without actually making a finding that that there was reason to combine those references to one of skill in the art, and then they made a very similar error as with gastroenitis, and they mapped the same EMR structure on two separate elements of the claim, the meter and the relay. And unless you have further questions... Can I just ask, do I understand, am I confused about NETCOM, is whether when the board credited Itron's expert's testimony to the effect that the NETCOM reference was in fact referring to frequency hopping CDMA, that, that the board said that's enough for you think that that's inappropriate, that that effectively turns it into an obviousness inquiry? Yeah, the problem is, is that NETCOM does not have CDMA technology. It's using a conventional radio frequency point-to-point communication, and which makes sense because it's an old reference and it predates CDMA. So the problem was it's just not there, and there is... But am I, just tell me, am I remembering incorrectly that their expert said, I read this actually to be a reference to, what is it, FH CDMA, is that frequency hopping CDMA? He offered that testimony, but his testimony, if you read it, is all conclusory. There's no citation, so he just says, it says this and that means CDMA, and we know from the TQ Delta decision that a conclusory, unsupported opinion of an expert cannot actually provide substantial evidence that, you know, the reference discloses the limitation. So that's the issue. Any further questions? No, thank you. Okay, thank you. May it please the court, I want to touch on one minor thing on the time bar before moving on, and that was counsel's comment that they were afforded no discovery, and I just want to make clear that's because it wasn't requested for at no point in the IPR proceedings, even after I personally informed counsel for ATI, who at the time was the same counsel that represented ATI in the litigation against the court in 2011 that gave rise to the purported time bar, did they say, hey, we want to understand a little bit more about the relationship between the parties, we want to seek discovery, and they just didn't raise that issue below. Turning to the merits of the three grounds dealing with a single claim, if the court affirms on any one of these grounds, that disposes of the dispute between the parties. It's all on claim eight, the only claim that was asserted in the litigation. With respect to the first grounds dealing with NETCOM, your Honor was exactly right that Dr. Solomon's opinion was saying, look, I'm explaining the reference, I'm saying what a person of ordinary skill in the art would understand this disclosure in the NETCOM paper to be, and that corresponds to FHCDMA. It certainly does not, there's no dispute, it doesn't use the acronym CDMA, but as Dr. Solomon pointed out, CDMA was not something new when ATI's patents were filed. Was that rebutted? Was any of Dr. Solomon's opinion rebutted? It was not, and in fact, the only discussion from ATI's expert, who's also the inventor of the patent, is that Appendix 2180, paragraph 57, in which his rebuttal focuses solely on the fact that NETCOM does not disclose commercial DSCDMA, or direct sequence CDMA. He does not challenge Dr. Solomon's opinion that a person of ordinary skill in the art would understand that reference to be teaching FHCDMA, nor was that probed at all in Dr. Solomon's deposition. What portion of the reference does Dr. Solomon say discloses CDMA? So Dr. Solomon walks through at Appendix 878 through 880, in those paragraphs, he explains what FHCDMA compared to direct sequence CDMA are, and that's his discussion of the difference between those technologies with respect to the It is at Appendix 893 to Appendix 896, dealing with the element labeled as 8.3.1 in the Appendix. Paragraphs 165 to 176, and specifically paragraph 168, Dr. Solomon, based on his discussion above, opines that a person, or actually it's the discussion below, opines that a person of ordinary skill in the art would recognize that the radio communication... And in the reference itself, that's at 934, the left-hand column, right smack in the middle. I'm sorry, I didn't catch that. And in the reference itself, that's at page 934 of the appendix, in the left-hand column, right, each radio accesses 240 channels over the 902928 megahertz band using a programmable pseudorandom pattern, makes the network highly immune to usable channel, isn't that, that's what paragraph 169 is referring to. That's right, and the dispute, and certainly that's what Dr. Solomon's relying on in part in these paragraphs to say, yes, you'd understand this is frequency hopping, they're each assigned a unique address, and that's essentially dividing the channel by this frequency hopping code, which is what frequency hopping CDMA is. The dispute between the parties, if you read this reference, it certainly discloses that. It doesn't use the word CDMA, it doesn't say it communicates by frequency hopping CDMA. As I understood counsel's argument, it was that this in fact is not frequency hopping CDMA, but there's no evidence in the record to contradict Dr. Solomon's opinion, and keep in mind he was characterized as a CDMA wizard by A.T.'s eyes counsel at oral argument, and there's nothing contradicting his opinion. Maybe for a he's specifically opined from the perspective of one of ordinary skill in the art, and as a result there's no testimony rebutting his opinion from that perspective that FHC-DMA is in fact disclosed expressly in the NETCOM reference, and so therefore there's substantial evidence supporting the board's final written decision on those grounds. With respect to Gastoniotis, again it's an anticipation reference, and the argument is that the remote control station disclosed in Gastoniotis cannot be both the claimed relay and the claimed control, and the claim is set up so that you have a control communicating through a relay, which communicates with a meter, and back and forth using CDMA at some point in the path. Our argument was is not, and was not below, as the board recognized, that a single remote station constitutes both the control and the relay. Our argument was that Gastoniotis expressly describes multiple remote control stations, daisy-chained, such that one serves as the control, which Gastoniotis describes, and then at appendix 968 column 4, lines 32 to 42, Gastoniotis says data obtained by one remote station can be communicated to a central location using the other remote stations as a relay. And so Gastoniotis expressly teaches that the infrastructure and the system used to communicate from the meter to the control station can have multiple remote stations in between the sort of end terminal remote control station that function as a relay. And so our argument is not that one box, so to speak, is satisfying two claim elements. It's that there are separate claim elements, and the board recognized that that was our argument and rejected the same argument that ATI is making now at appendix 235. With a similar attack on that combination on the grounds that what's called the EMR in Nelson is serving as both the relay and control. Our response to that is the same as it is with respect to Gastoniotis. The pictures in Nelson that we included in our briefing at appendix 1018 and figures 15 through 17 in that Nelson reference specifically show the daisy chain I just described. The primary challenge to the Nelson and Roach obviousness grounds is one of an allegation that there was conclusory testimony and that the board didn't make sufficient factual determinations on motivations combined. Again we have unrebutted expert testimony at appendix 912 to 16 paragraphs 231 to 241 from Dr. Solomon opining on why a person of ordinary skill in the art at the time of the system in Nelson and used the CDMA teaching from Roach and applied that to the system in Nelson. And that's unrebutted. Council referred to the recent TQ Delta decision indicating that the board cannot rely on conclusory expert testimony. Here it's robust expert testimony that the board considered in detail and adopted as its own. It is not conclusory. I think if you take a look at again that starts at appendix 912 you'll see that Dr. Solomon set forth in detail why one of the ordinary skill in the art would have been motivated to do the proposed combination. So with that unless there are additional questions I'll waive the rest of my time. Okay thank you very much. Thank you. All right I'll address each of the three grounds. So briefly NETCOM does not disclose CDMA. If you look at appendix 934 it's not there. They talk about these radio frequency communications. If you look at the expert testimony that petitioner is relying on to fill in the gap at appendix site 893 to 896 it's entirely conclusory. There's no analysis and there is no support. So petitioner has the burden on this so if they don't meet their burden it is not incumbent upon us to present competing expert testimony on this point and they have not met their burden to show that NETCOM either expressly or inherently disclosed CDMA. So turning to the second ground, gastroenteritis. Claim 8 requires three separate elements. There is the utility meter, there is the relay that communicates the metering data back to a control where it is read and the purpose of the system is to eliminate the need for human meter readers and make this a fully automated system. And here the issue is that they are mapping the remote station as both the relay, the communicator, and the end that's actually collecting all of the data. And if you look at gastroenteritis appendix 968 at remote station is either a handheld device or something in a car or something at the house that's actually gathering data from the meter and so if you say that that is both the communication means and the end thing you have this odd situation which we have here which is a human meter reader partially automated system being contorted to anticipate the fully automated system we have in the 841 patent and that just makes no sense and it is inconsistent with this court's decision in Becton. Finally we have the Nelson and Roach ground. Under newvasive the board is required to make their own findings. They're not just allowed to summarize the party's attorney's argument. And Nelson already had a communication system in there and the board made no finding as to why one of ordinary skill in the art would have substituted out Nelson's communication system with the CDMA system in Roach. So unless you have further questions. Thank you very much.